IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALBERT L. LAW, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *   Civil Action No. 05-00300-WS-B |
| | * |
| JO ANNE B. BARNHART, | * |
| Commissioner of | * |
| Social Security, | * |
| | * |
| Defendant. | * |

**REPORT AND RECOMMENDATION**

Plaintiff Albert L. Law ("Plaintiff") brings this action seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for period of disability and disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 416 et seq. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was held on June 12, 2006. Upon consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner be **AFFIRMED.**

**I.   Procedural History**

Plaintiff protectively filed an application for disability benefits on March 18, 2003, alleging disability since March 1, 1988 due to asbestos, bronchitis, back problems, muscle spasms, COPD, Raynaud's disease,[1] a gunshot wound, ulcers and arthritis. (Tr. 18, 49-50, 84-103, 125). Plaintiff's application was initially denied on May 2, 2003. (Id. at 49-55). In the letter of denial, explaining

---

[1]Raynaud's Disease (or Phenomenon) is a condition in which blood flow to the surface tissue of the hands and feet is temporarily decreased, usually as an overresponse to cold temperatures. See www.webmd.com (last visited 9/7/06).

the determination, Plaintiff was informed as follows:

> We have determined your condition was not disabling on any date through 03/31/93, when you were last insured for disability benefits. In deciding this, we considered the medical records, your statements and how your condition affected your ability to work.
>
> When applying for disability benefits, you must meet certain eligibility requirements. The information in your file shows that the date you last met the insured status requirements for consideration of disability was 03/31/93. You state you were disabled and unable to work because of asbestos, bronchitis, chronic obstructive pulmonry, arthritis, back problems, Raynaud Disease, gunshot wound, and ulcers. We have made multiple attempts to document your claim. Our efforts to obtain enough evidence to make a decision on your claim have been unsuccessful. Since the evidence in file is insufficient to determine the severity of your conditions on or before the date you last met eligibility requirements, your claim is denied.

(Id. at 50).

Plaintiff sought reconsideration, and filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Id. at 56-57). On April 7, 2004, ALJ Alan E. Michel ("ALJ Michel") held an administrative hearing which was attended by Plaintiff and a vocational expert.[2] (Id. at 25-48). At the hearing, the ALJ informed Plaintiff of his right to be represented by counsel, and offered to delay the hearing to afford Plaintiff time in which to obtain counsel. (Id. at 28-29). Plaintiff declined the ALJ's offer, and elected to proceed without counsel. (Tr. 29).

On June 25, 2004, ALJ Michel issued an unfavorable decision. (Id. at 14-21). He concluded that Plaintiff last met the disability insured status requirements under Title II of the Act on March 31, 1993, and that he failed to establish that his disability arose prior to that date. (Id. at 21). In reaching this conclusion, the ALJ found that while Plaintiff has medical impairments, there is no

---

[2] While Plaintiff makes repeated reference to the fact that he was unrepresented by counsel at the administrative hearing, his appeal falls short of asserting lack of representation as a claim. Additionally, a review of the hearing transcript reveals that he was properly apprized of his statutory right to counsel and offered sixty days to find an attorney to represent him; however, he waived said right. (Id. at 28-29).

objective medical evidence that establishes that his impairments posed even minimal restrictions in his ability to perform work and work-like activity prior to March 31, 1993, such that he does not have any severe impairments. (Id.) Next, the ALJ determined that Plaintiff's allegations, regarding his limitations, lacked corroboration by medically acceptable clinical and diagnostic techniques prior to March 31, 1993, and that while the evidentiary record reflects various diagnoses, no studies, laboratory analyses or diagnostic evaluations exist, prior to March 31, 1993, to establish an objectively determinable functional limitations prior to that date. (Id.) As a result, the ALJ concluded that Plaintiff was not disabled. (Id.)

On May 5, 2005, Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council ("AC"), thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 4-6). The parties agree that this case is ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Background Facts

Plaintiff was born on June 10, 1941, and was 62 years old at the time of the administrative hearing. (Tr. 18, 33). He has a 12th grade education and served in the U.S. army from 1961 through 1981. (Id. at 33, 102). Plaintiff also has past relevant work experience ("PRW") as a general laborer in a restaurant.[3] (Id. at 40-41, 99, 105, 111, 115). Plaintiff reported that he has a long history of receiving medical treatment from the Veterans Administration ("VA"),[4] and that he had received a

---

[3] According to Plaintiff, he performed his restaurant job under special conditions, such as irregular hours and frequent rest periods, due to muscle spasms. (Id. at 40-41, 111).

[4] Plaintiff was in the U.S. Army from 1961-1981, serving as an instructor and postman. (Id. at 35-37).

20-year award of VA benefits[5] for service-connected injuries due to Raynaud's disease, an ulcer and residuals from a gunshot wound. (Id. at 79-83). Plaintiff testified that his medications include Albuterol, analgesic cream, "bio-medical," Guaifenesin, Ibuprofen and Serevent. (Id. at 101).

At the April 7, 2004 hearing, Plaintiff testified that he became disabled on March 1, 1988, due to ulcers and muscle spasms from a gunshot wound he received while serving in Vietnam. (Id. at 39). Plaintiff testified that his medical problems include suffering from breathing problems for the past 10 years, which he effectively treats with a prescription nebulizer and exercise, muscle spasms, ulcers, a "bad arm," and a back problem. (Tr. 34-35, 42-44). He testified that his breathing problems cause him the most medical problems "in working." (Id. at 43). According to Plaintiff, he last worked in July 1994, in a restaurant/cafeteria (washing floors, running the dishwasher and unloading trucks). (Id. at 40-41). He reported that he stopped working due to muscle spasms, an inability to operate the dishwasher, and because it was "too dangerous for my health." (Id. at 41). As for activities of daily living, Plaintiff testified that he can bathe, dress and groom himself; drive an automobile regularly; wash his clothes; grocery shop; cook for himself; walk a little; and take care of himself. (Id. at 41-43). Plaintiff testified that he cannot work outside (perform yard work, etc.), however, due to his "breathing" problems and due to having a bad arm. (Id. at 42-43).

### III. Issues on Appeal

A. Whether the ALJ erred by failing to find that Plaintiff's Raynaud's Disease, gunshot wound residuals and ulcer constitute severe impairments?

B. Whether the ALJ erred by failing to utilize a medical advisor/consultant examination to infer when Plaintiff's disability began?

C. Whether the ALJ erred by failing to develop the record with respect to Plaintiff's medical

---

[5]While the record reflects that Plaintiff was awarded VA benefits for service-connected injuries, it is not clear when the benefits commenced.

records?

**IV.     Analysis**

**A.      Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  This Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence, and 2) whether the correct legal standards were applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[6]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

**B.      Discussion**

An individual who applies for Social Security disability benefits must prove her disability. 20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

---

[6]This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.[7] See, e.g., Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

1. **Whether the ALJ erred by failing to find that Plaintiff's Raynaud's Disease, gunshot wound residuals and ulcer constitute severe impairments?**

Plaintiff contends that the ALJ erred by failing to find that his Raynaud's Disease, residuals of a gunshot wound with retained foreign body muscle group and ulcer constitute severe impairments. According to Plaintiff, the ALJ ignored the fact that in December 2002, the Veteran's Administration ("VA") rated his Raynaud's Disease as 40 percent disabling, his ulcer as 10 percent disabling, and the residuals of his gunshot wound as 10 percent disabling. Contrary to Plaintiff's contention, a review of the evidence supports the ALJ's finding.

In reaching his decision, the ALJ discussed Plaintiff's medical records as follows:

> The VA treatment notations indicate that the claimant presented to the medical clinic on June 23, 1995 . . . [and] [at] that time, the claimant voiced complaints of pain at his rib cage and AP and lateral views of the thoracic spine revealed compression fracture at T11 . . . .

---

[7]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

Following his June 1995 visit to the clinic, there is no evidence that the claimant sought any further medical treatment for any reason for over seven years. According to the evidentiary record, the claimant next sought treatment in October 2002 at the VA clinic. At that time, the claimant reported that he had frostbite (Raynaud's disease) in the 1960's affecting his ears, forehead and hands and that the pain was worse during cold weather. He also reported occasional fatigue and pale fingers which occasionally turn patchy red when it was cold. The treatment notations reveal that the claimant was status post gunshot wound in the left chest with foreign bodies and that he reported increased muscle spasms associated with this injury. He also reported a constant dull ache in the chest wall area, as well as having been diagnosed with duodenal ulcers in the 1970s; however, he reported that he had not had any follow-up therapies or diagnostic testing completed since that time . . . . The claimant also reported back pain that has grown worse over the last year and a half . . . He reported pain in his hands . . . . There are shrapnel remnants in the left flank area . . . . X-ray of the lumbar spine showed mild spurring, degenerative changes and shrapnel fragments . . . . Multiple bullet fragments were seen in the posterior abdomen. Based on the examination and test findings of October 15, 2002, it was felt that the claimant's respiratory condition prevented him from maintaining gainful employment.

* * *

. . . . The VA issued its latest disability determination on December 24, 2002, in which it assessed the following disability percentages on the claimant's behalf: a 40% disability rating was given to the claimant's Raynaud's disease, 10% residuals of a gunshot wound and 10% to history of duodenal ulcer . . . . The VA pointed to the claimant's service medical records from November 18, 1960 through November 9, 1962 and May 10, 1963 to May 31, 1981, VCAA letter dated April 3, 2002, VA progress notes from August 28, 2001 to October 8, 2002, and to VA examinations conducted on January 15, 2002, October 15, 2002 and October 16, 2002 in making its determination

[ ] . . . .

. . . . In reaching the foregoing conclusion, all of the medical and vocational developments occurring in the period following the expiration of disability insured status were evaluated for relevance and applicability.  However, the evidentiary record in this case simply does not contain the types of reports, physical examinations, and diagnostic evaluations prior to March 31, 1993, supportive of disability. No physician indicated the presence of any limitation due to the claimant's condition prior to March 31, 1993, and there is no credible documentation of any type that establishes the presence of any functional restriction on the claimant's behalf as a result of his impairments prior to his date last insured.

* * *

The undersigned Administrative Law Judge also has fully considered the VA's opinion. A decision by any nongovernmental agency or any other governmental agency about whether an individual is disabled is based on its rules and is not the

7

> Social Security Administration's decision about whether a person is disabled [] . . . . It should be noted, however, that the claimant was denied entitlement to individual un-employability because he had "not been found unable to secure or follow a substantially gainful occupation as a result of his service connected disabilities."
>
> Based on the scant objective evidence, the medical consultants of the State Agency were left to conclude that the claimant's condition was not severe enough to affect his ability to carry out most activities [] . . . . The undersigned agrees with the State Agency's ultimate conclusion that the claimant's ability to work was not significantly affected on or before the date the claimant last met the eligibility requirements.
>
> * * *

(Tr. 18-20 (citations omitted)).

At the outset, it should be noted that a VA determination of disability does not automatically qualify an individual to receive Social Security disability benefits; rather, Social Security regulations provide that a decision by any other governmental agency is not binding upon the Commissioner. 20 C.F.R. § 404.1504.  See, e.g., Falcon v. Heckler, 732 F.2d 827, 831 (11th Cir. 1984); Bloodsworth v. Heckler, 703 F.2d 1233, 1241 (11th Cir. 1983).  A disability decision by the VA is based on its rules and not those of the Social Security Administration.  Id.  The Commissioner is entitled to make an independent finding regarding whether an individual is disabled within the meaning of the Act. See, e.g., Timmerman v. Weinberger, 510 F.2d 439, 444 (8th Cir. 1975).[8]  Nevertheless, a VA finding is important enough to deserve explicit attention and must be considered by the ALJ as "it is evidence that should be given great weight."  Brady v. Heckler, 724 F.2d 914, 921 (11th Cir. 1984)

---

[8] See also e.g. Barraza v. Barnhart, 61 Fed. Appx. 917, 2003 WL 1098841, *1 (5th Cir. Feb. 11, 2003) (unpublished):

> A [Veterans Administration (VA)] rating . . . is evidence that is entitled to a certain amount of weight and must be considered by the [Administrative Law Judge (ALJ)]." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir.2001) (citing *Loza v. Apfel,* 219 F.3d 378, 394 (5th Cir.2000); *Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir.1994); *Rodriguez v. Schweiker,* 640 F.2d 682, 686 (5th Cir.1981)). The *Chambliss* court noted that *Rodriguez* and its progeny referred to a VA disability determination as being entitled to "great weight," but the relative weight to be given to this type of evidence will vary depending on the factual circumstances of each case. *Id.* ALJs need not give great weight to a VA disability determination if they adequately explain the valid reasons for not doing so. *Id.*

(citing Olson v. Schweiker, 663 F.2d 593 (5th Cir. 1981)).

In this case, the ALJ expressly discussed the VA's 2002 disability rating and the fact the VA determined that Plaintiff was not entitled to an individual un-employability rating because he had not been found unable to secure or follow a substantially gainful occupation as a result of his service connected disabilities. (Tr. 17-21). The ALJ also observed that while it is clear that Plaintiff's arthritis, degenerative disease and chronic obstructive pulmonary disease "did not form "overnight," the evidentiary record in this case simply does not contain the types of reports, physical examinations and diagnostic evaluations prior to March 31, 1993, supportive of disability. (Id. at 20). The ALJ found further, that no physician indicated the presence of any limitation due to Plaintiff's condition prior to March 31, 1993, and there is no credible documentation of any type that establishes the presence of any functional restriction on his behalf as a result of his impairments prior to his last insured date. (Id. at 20).

Here, the ALJ did not err in his finding. Plaintiff is required to show that he became disabled before his insured status expired on March 31, 1993. 42 U.S.C. § 423(c)(1); Tanner v. Apfel, 2000 U.S. DIST. LEXIS 7670 (S.D. Ala. May 3, 2000). The Social Security Act is clear in requiring that disability must be proven to exist during the time a claimant is insured within the meaning of the special insured status requirements of the Act. See, e.g., Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979); Tanner, 2000 U.S. DIST. LEXIS 7670, *8. If a claimant becomes disabled after his status has expired, his claim must be denied despite his disability. Id.

Despite repeated requests on behalf of the Commissioner, the medical records provided by the VA and referenced by the ALJ are scant and do not reflect probative information that suggests that Plaintiff was suffering from a severe impairment during the 1988 to March 1993 time frame.

9

Moreover, while Plaintiff's counsel submitted additional records to the Appeals Council (Tr. 170-187), those records do not cover the period in question, namely 1988 to March 1993. The only 1993 entry is a single notation for December 15, 1993, which reflects an unscheduled clinic visit for "admitting/screening." (Id. at 177). The 1994 records reflect that Plaintiff was seen at the VA clinic on eleven occasions in 1994. (Id.) He reported a history of stomach ulcer; however, no related medical records were available. (Id. at 186). In March 1994, Plaintiff was admitted for a EGD with possible biopsy. (Id. at 186-187). An EGD with biopsy was performed. (Id.) He was found to have severe gastritis, esophagitis and a small hiatal hernia. (Tr. 187). Plaintiff did well post operatively, was ambulating and voiding without difficulty, was able to tolerate a regular diet, and was subsequently discharged. (Id.) Plaintiff was seen on eight occasions in 1995. (Id. at 177). He reported pain in his ribs. (Id. at 181). X-rays revealed metallic fragments over his left rib, and it was noted that the x-rays revealed essentially a normal study. (Id.)

It appears that following 1995, Plaintiff did not seek any further medical attention from the VA until seven years later, in 2002. A searching review of those records which were provided by the VA, as well as those provided to the Appeals Council by Plaintiff's counsel, fails to reveal any information regarding Plaintiff's medical condition during the pertinent time period, namely 1988 through March 1993. Simply put, while Plaintiff points to the VA's disability ratings,[9] he has wholly failed to identify any record evidence which supports his assertion that he suffered from severe impairments and was disabled prior to March 31, 1993. The fact that Plaintiff's impairments may have been severe at the time of the April 2004 administrative hearing is of no moment, because

---

[9]Interestingly, while the VA assigned a 40 percent disability evaluation of Plaintiff's Raynaud's disease, a 10 percent disability evaluation of Plaintiff's residuals of gunshot wound, and a 10 percent disability evaluation of Plaintiff's duodenal ucler, at the administrative hearing, Plaintiff did not mention his Raynaud's disease as a problem. According to Plaintiff, his main problem was his breathing difficulties. (Id. at 43).

there is simply no basis, in view of the record evidence, upon which the ALJ could have inferred that his impairments were severe prior to March 31, 1993.  See, e.g., Tanner, 2000 U.S. DIST. LEXIS 7670, *8 (stating that where there is no evidence that a plaintiff became disabled prior to the date last insured, the claim must be rejected, and the fact that a plaintiff may have become disabled after expiration of his or her insured status is irrelevant).  Accordingly, the ALJ did not err in finding that Plaintiff failed to establish that his alleged impairments were severe during the relevant time period.

### 2. **Whether the ALJ erred by failing to utilize a medical advisor/consultative examination to infer the date on which his alleged disability began?**

Plaintiff next asserts that the ALJ erred by failing to obtain a medical advisor to infer when his alleged disability began, and further erred by failing to order a consultative exam to assess the severity of his medical condition prior to March 31, 1993.  As noted supra, the record in this case is devoid of any evidence that Plaintiff suffered from a disabling impairment prior to the expiration of his insured status.  Despite repeated requests from the Social Security Administration, the only records the Commissioner was able to secure from the VA were based on Plaintiff's visits in 1995, 2002, and his 2002 disability rating.  A searching review of those records, as well as those submitted to the Appeals Council, fail to reveal any information regarding Plaintiff's medical condition during the pertinent time period, namely 1988 through March 31, 1993.  Accordingly, there is simply no evidence from which a medical consultant could infer that Plaintiff was disabled before March 31, 1993.  As aptly noted by the Court in Tanner v. Apfel:

> [i]f the Court were to endorse Plaintiff's theory of disability onset, any plaintiff whose insured status had expired prior to the establishment of disability would be able to argue that they were entitled to remand for the purpose of obtaining the testimony of a medical expert to infer that their onset date was actually prior to the expiration of their insured status.  The Court refuses to do so.

Tanner, 2000 U.S. DIST. LEXIS 7670, *18.

Thus, while it is reversible error for an ALJ not to seek a medical consultant or to order a consultative examination when necessary for him to make an informed decision, Reeves v. Heckler, 734 F.2d 519, 522 at n.1 (11th Cir. 1984) and Butler v. Barnhart, 347 F. Supp. 2d 1116, 1121 (M.D. Ala. 2003), the ALJ is not required to do so unless the record, medical and non-medical, establishes the necessity for such an examination.  See, e.g., Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988).  Because the record evidence in this case provides no insight as to Plaintiff's medical condition from 1988 through March 31, 1993, there was no need for a consultative examination as there was simply no basis upon which to infer a disability prior to the expiration of Plaintiff's insured status.  Thus, Plaintiff's claim must fail.  See, e.g., Butler, 347 F.2d at 1122 (providing that the ALJ was not required to order a consultative examination where the paucity of medical evidence simply did not support an inference that it was necessary to secure a consultative examination).

    **3.**    **Whether the ALJ erred by failing to develop the record with respect to Plaintiff's medical records?**

Plaintiff contends that the ALJ erred because he failed to develop the record, in that he did not obtain records from his treating sources for the relevant time period.  The undersigned agrees with Plaintiff that the ALJ is charged with developing a full and complete record.  See, e.g., Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984).  Indeed, the ALJ is bound to make every reasonable effort to obtain from a claimant's treating physician(s), all the medical evidence necessary to make a determination.  20 C.F.R. § 404.1512(d).  However, the burden remains on a claimant to prove that he is disabled, as the regulations provide that:

> In general, you have to prove to us that your are blind or disabled.  Therefore, you must bring to our attention everything that shows that your blind or disabled.  This means you must furnish medical and other evidence that we can use to reach conclusions about your impairment(s) and, if material to the determination or whether

you are blind or disabled, its effect on your ability to work on a sustained basis . . . .

20 C.F.R. § 404.1512(a).

In the case sub judice, the record reflects that the Agency sought Plaintiff's medical records, from the VA, shortly after his claim was filed. A VA report was received on March 28, 2003; however, it only related to Plaintiff's VA treatment from 1995 forward. (Tr. 50). A Report of Contact entry, dated May 2, 2003, stated as follows:

> [s]everal attempts to obtain records from VA dating back to 1988 have been unsuccessful. The first VA req was mailed 3/21/03 and current medical was receipted in 3/28/03 I called and spoke with several people at VA to stress that we needed old records. I was told that they are housed at a different location and it could take from a month to 6 months. It has been one month since the second request was mailed to the VA. The folder only shows current medical and since I do not have any medical from the AOD to the DLI, the claim is found to be insufficient due to lack of evidence.

(Id. at 124).

Additionally, in a letter to Plaintiff also dated May 2, 2003, explaining the denial of his claim, he was advised that ". . . . [w]e have made multiple attempts to document your claim. Our efforts to obtain enough evidence to make a decision on your claim have been unsuccessful. Since the evidence in the file is insufficient to determine the severity of your conditions on or before the date you last met eligibility requirements, your claim is denied." (Id. at 50). The record reflects that despite the repeated verbal and written requests from the Agency, when the ALJ conducted the administrative hearing nearly one year later, on April 7, 2004, no additional medical records had been provided by the VA. Moreover, it is important to note that while the VA's 2002 disability rating referenced medical records from November 18, 1960 through November 9, 1962, May 10, 1963 through May 31, 1981, and the 2001 and 2002 time periods, the VA 2002 disability rating does not

13

reference any medical records for the pertinent time frame, nor does it include any information addressing Plaintiff's medical condition during the pertinent time frame, namely 1988 through March 1993. Further, the records submitted by Plaintiff's counsel to the Appeals Counsel provide no indication that he was suffering from a disabling condition during the 1988 through March 1993 time period. In fact, Plaintiff has not called this Court's attention to the existence of any medical evidence which would shed light on the issue of whether he was disabled prior to the expiration of his insured status. Based upon the totality of the evidence before the Court, the undersigned finds that the ALJ fulfilled his duty to develop a full and complete record, and that Plaintiff failed to carry his burden of establishing that his allegedly disabling medical conditions existed prior to the expiration of his insured status.

## V.    Conclusion

For the reasons set forth, and upon consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security denying Plaintiff's claim for period of disability and disability insurance benefits is due to be **AFFIRMED.**

The attached sheet contains important information regarding objections to this report and recommendation.

**DONE** this the **7th** day of **September, 2006.**

/s/ Sonja F. Bivins
**UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.      **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.      **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

      /s/SONJA F. BIVINS  
      **UNITED STATES MAGISTRATE JUDGE**